IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EMERALD CASINO, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 6625 |
| | ) | |
| THE ILLINOIS GAMING BOARD; and AARON JAFFE, CHARLES GARDNER, REV. EUGENE WALKER, JOE MOORE, JR., in their capacities as members of the Illinois Gaming Board; and JEANETTE TAMAYO, in her capacity as administrator of the Illinois Gaming Board | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER REGARDING
PLAINTIFF-APPELLANT'S APPEAL

JAMES F. HOLDERMAN, District Judge:

Plaintiff-Appellant Emerald Casino, Inc. ("Emerald") filed a complaint in bankruptcy court against Defendants-Appellees the Illinois Gaming Board ("Board"); Board members Aaron Jaffe, Charles Gardner, Reverend Eugene Winkler, Joe Moore, Jr.; and Board administrator Jeanette Tamayo, seeking specific performance and injunctive relief. United States Bankruptcy Court Chief Judge Eugene R. Wedoff granted the defendant-appellants' motion to dismiss, and Emerald appeals the decision (Dkt. No. 1). This court affirms the judgment of the United States Bankruptcy Court Chief Judge Eugene R. Wedoff.

BACKGROUND

Due to the long history of this case, this court limits its recitation of the facts to only

1

those relevant for this appeal, taking the allegations in the complaint as true and all reasonable inferences in favor of Emerald, Fed. R. Bank. P. 7012(b) (adopting Fed. R. Civ. P. 12(b)); *see Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003). Emerald has been a holder since 1992 of an Illinois Riverboat Gambling License ("license") issued by the Board. (Cmpl. ¶ 8.) In March 2001, the Board initiated administrative disciplinary proceedings against Emerald to revoke its license for alleged violations of Illinois law. (Cmpl. ¶ 10.) Before the disciplinary proceedings could be resolved, Emerald's creditors filed an involuntary bankruptcy petition under Chapter 7 against Emerald, which was later converted to a Chapter 11 proceeding. (Cmpl. ¶¶ 9-10.) Neither the Board nor the Illinois Attorney General ("IAG") filed claims against Emerald in federal bankruptcy court.

Since then, Emerald, the IAG, and the Board have been engaged in negotiations over the sale of Emerald's license and the dismissal of the disciplinary proceedings against it. (Cmpl. ¶ 11.) These negotiations at one point resulted in Emerald's filing for an injunction in bankruptcy court against the IAG and the Board to stay the disciplinary proceedings. *See In re Emerald Casino, Inc.*, Nos. 03-C-5457, 02-B-22977, 03-A-01929, 2003 WL 23147946, *3 (N.D. Ill. Dec. 24, 2003). The bankruptcy court denied Emerald's request for an injunction because, among other reasons, the Board's actions fell within the exception to the Bankruptcy Code's automatic stay, 11 U.S.C. §§ 362, 364(b)(4), for police power and regulatory interests. *See id.* at *3-*4. This court affirmed the bankruptcy court's judgment in December 2003. *See id.* at *10.

Meanwhile, Emerald submitted a draft confirmation plan to the bankruptcy court that December of 2003, based on negotiations with the IAG and the Board that Emerald continued to have outside of the bankruptcy proceedings. (Cmpl. ¶ 13.) Emerald premised the proposed

2

confirmation plan upon a settlement agreement that Emerald had reached with the IAG and the Board and embodied in a joint letter dated December 15, 2003 (hereinafter "the December 2003 letter"). (*Id.*) In the December 2003 letter, the IAG and the Board agreed to stay and eventually dismiss the disciplinary proceedings and arrange a bidding procedure for the sale of Emerald's license, after which the Board would conduct a suitability review of the successful bidder. (Appellant's Br. Ex. B.) These agreements were conditioned on the occurrence of a certain set of events. Should one condition fail, the agreements would be terminated. (*Id.*) The December 2003 letter also contained a provision in which the IAG and the Board asserted that they did not intend to waive their sovereign immunity or consent to the jurisdiction of the bankruptcy court. (*Id.*)

Section 5.10 of the proposed confirmation plan refers to the December 2003 letter. (Appellant's Br. Ex. A, § 5.10.) In section 5.10, the proposed plan acknowledges that the IAG and the Board intend to stay and then dismiss the disciplinary proceedings, contingent on the conditions set forth in the December 2003 letter, and the state—although not a creditor—will receive payment from a bankruptcy estate representative. (*Id.*) As in the December 2003 letter, the proposed plan includes a paragraph stating that nothing in the plan "shall be deemed a waiver by the Board or the State of Illinois, or by any of their respective officers, employees, agents, representatives, or lawyers, of their sovereign immunity." (*Id.* at § 11.20, ¶ 2.) This statement comes in the last paragraph of section 11 that begins with an assertion of the bankruptcy court's authority and jurisdiction to enforce the confirmation plan and "any document, instrument, agreement, or action undertaken in connection with the Plan or Confirmation Order," (*id.* at § 11.1, 11.7), along with other enumerated powers.

3

Pursuant to the terms of the December 2003 letter and the proposed confirmation plan, Emerald conducted an auction of its license in March 2004, and the Isle of Capri company was designated the winning bidder. (Cmpl. ¶ 15.) The IAG, however, subsequently announced in May 2004 her intention to resume the disciplinary proceedings, after one of the conditions in the December 2003 letter was not satisfied. (Cmpl. ¶ 17.) At the time, the IAG and the members of the Board disagreed over whether disciplinary proceedings should continue and whether the Board could terminate the proceedings if the IAG objected.

Against the backdrop of this disagreement between the IAG and then-members of the Board, the bankruptcy court held a hearing to determine whether to approve the confirmation plan. (Appellant's App. at 233-34.) During the hearing, Emerald conceded that there was nothing in the proposed plan to prevent the resumption of the disciplinary proceedings except for the support, at that time, of the majority of the Board. (*Id.* at 234-35.) In addition, Emerald acknowledged that there was no commitment that the IAG and the Board would support the confirmation plan, nor did the proposed plan currently include an injunction against the IAG or the Board to stay or dismiss the disciplinary proceedings. (*Id.* at 233-234.)

Based on Emerald's representations that nothing in the plan required the IAG's or the Board's participation, the bankruptcy court confirmed the final plan on July 22, 2004. (Cmpl. ¶ 25; Appellant's App. at 260.) The Board reviewed and voted to officially approve the plan shortly afterward. (Cmpl. ¶ 25.) On August 2, 2004, the Board and Emerald executed a second letter agreement (hereinafter "August 2004 letter"). (*Id.*) In the August 2004 letter, the Board agreed to stay the disciplinary proceedings and conduct a suitability review of those who may purchase the license in connection with the confirmation plan and subject to certain conditions.

(Appellant's App. at 51, 53.) The August 2004 letter also contained a provision asserting that the Board did not waive its sovereign immunity nor consent to the jurisdiction of the bankruptcy court. (*Id*. at 55.) Emerald has never sought to amend or modify the approved confirmation plan to include any reference to the August 2004 letter.

Since the bankruptcy court confirmed the plan and the Board agreed to the August 2004 letter, several members of the Board resigned. (Cmpl. ¶ 27.) Soon after the appointment of new members to replace those that had resigned, in April 2005, the Board elected to resume the disciplinary proceedings against Emerald. (*Id*. at ¶¶ 28-29.) In November 2005, the administrative disciplinary proceedings concluded with the recommendation to revoke Emerald's license, and a month later the Board voted to revoke Emerald's license; Emerald is challenging the outcome of the disciplinary proceedings in state court. (Appellant's Br. at 5-6.) In addition, the Board still has not conducted a suitability review of any potential purchasers of Emerald's license, as it agreed to do in the August 2004 letter.

Seeking to enforce both the confirmation plan and the August 2004 letter, Emerald filed for an injunction in bankruptcy court in July 2005. As relevant for this court's purposes, Emerald sought specific performance of the "Confirmed Plan, as agreed to by the [Board]" under 11 U.S.C. § 1142. (Cmpl. ¶¶ 59-62.). In addition, Emerald charged the Board with breach of contract with regard to the August 2004 letter and alleged that Emerald reasonably relied on the promises in the August 2004 letter, so promissory estoppel should apply. (Cmpl. ¶¶ 37-51.)

The bankruptcy court rejected Emerald's request for injunctive relief. Granting the Board's motion to dismiss, the bankruptcy court held that the Board was not a party to the plan and the plan contained no obligations binding on the Board. Without anything binding the Board

in the plan, the bankruptcy court determined that it had no power to enforce the plan against the Board under § 1142. As for the terms of the August 2004 letter, the bankruptcy court concluded that the breach-of-contract and promissory estoppel claims arise under state law and are barred by sovereign immunity. Thoroughly addressing each of Emerald's arguments against the Board's assertion of sovereign immunity, the bankruptcy court first determined the relief sought did not fall within the bankruptcy's court *in rem* jurisdiction (which would have made the Board's sovereign immunity defense unavailable) since the injunction would amount to coercive judicial constraint against state proceedings. In addition, the bankruptcy court concluded that the Board did not waive sovereign immunity, recognizing that the Board was not a party to the confirmation plan and giving weight to the sovereign-immunity provisions in both the confirmation plan and the August 2004 letter. Nor could Emerald overcome sovereign immunity by seeking prospective injunctive relief against state officials for violations of federal law under *Ex Parte Young*, 209 U.S. 123 (1908); Emerald sought an injunction to enforce the separate August 2004 letter—a contract under state law—and not the federal confirmation plan. Likewise, the bankruptcy court noted, the bankruptcy statutes gave the bankruptcy court authority to enforce only the confirmation plan, not obligations set out solely in the separate contract under state law. Hence, the bankruptcy court found Emerald's argument that 11 U.S.C. § 106 abrogated sovereign immunity to be inapplicable. After the bankruptcy court also denied Emerald's motion for reconsideration, Emerald timely appealed from the bankruptcy court's dismissal.[1]

---

[1] The bankruptcy court in the same decision dismissed plaintiff Village of Rosemont's complaint. The Village of Rosemont immediately appealed, and on December 7, 2005, District Judge Amy St. Eve affirmed the bankruptcy court's judgment in *In re Emerald Casino, Inc.* 334

STANDARD OF REVIEW

This court reviews the bankruptcy court's findings of fact, including its interpretation of confirmation plans, for clear error and its legal conclusions de novo. *In re Heartland Steel, Inc.,* 389 F.3d 741, 743-44 (7th Cir. 2004); *Matter of Greenig*, 152 F.3d 631, 633 (7th Cir. 1998). Rulings on permanent injunctions and specific performance are subject to an abuse of discretion standard. *In re Emerald,* 334 B.R. at 386; *see Dupuy v. Samuels*, 397 F.3d 493, 502 (7th Cir. 2005) (injunction); *Medcom Holding Co. v. Baxter Travenol Labs., Inc*. 106 F.3d 1388, 1403 (7th Cir. 1997) (specific performance). Additionally, a bankruptcy court's interpretation of a confirmation plan is reviewed under the abuse of discretion standard since the plan is not just a contract between private parties but an order by the bankruptcy court. *In re Heartland Steel, Inc.*, 389 F.3d at 745.

ANALYSIS

Emerald first argues that bankruptcy court erred in failing to use its injunctive powers under two statutes, 11 U.S.C. § 1141 and § 1142, to order the Board to abide by the confirmation plan. (Appellant's Br. at 17.) According to Emerald, even though the Board was not a party to the confirmation plan, the Board is set to receive property under § 5.10 of the plan, and so the bankruptcy court may enforce the plan's binding terms against the Board pursuant to 11 U.S.C. § 1141(a). 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind . . . any entity acquiring property under the plan"). In addition, Emerald argues that, by agreeing to the August 2004 letter, the Board chose to bind itself to the confirmation plan, even though it was not

---

B.R. 378 (N.D. Ill. 2005). The case is currently pending on appeal before the Seventh Circuit Court of Appeals. *Village of Rosemont v. Jaffe*, No. 05-4558 (7th Cir.).

required to be bound at the time the bankruptcy court approved the plan. Once the Board voluntarily bound itself to carry out the terms of the plan, says Emerald, the bankruptcy court had the authority under 11 U.S.C. § 1142 to "direct the debtor or any other necessary party" to execute an agreement or perform any other act "necessary for the consummation of the plan." 11 U.S.C. § 1142(b).

Emerald runs into the same problem that its co-plaintiff Rosemont did when it raised this argument to Judge St. Eve: the confirmation plan does not contain the commitments that Emerald seeks to enforce. *See In re Emerald*, 334 B.R. at 387-88. As the bankruptcy court and later Judge St. Eve aptly recognized, the confirmation plan does not include the renewed promises from the August 2004 letter to suspend the disciplinary proceedings and conduct a suitability review from the August 2004 letter. *Id.* at 387. The confirmation plan refers only to commitments from the December 2003 letter and, once the conditions set out in the December 2003 letter failed, those commitments were no longer binding. Hence, even assuming that the Board could be bound by the confirmation plan, the obligations that Emerald seeks the bankruptcy court to enforce are contained not in the confirmation plan, but in the August 2004 letter, and sections 1141 and 1142 both supply the bankruptcy court only with authority to enforce only the terms of the confirmation plan. *See id.* at 387-88; *see also In re U.S. Brass Corp.*, 301 F.3d 296, 305-06 (5th Cir. 2002) ("§ 1142(b) does not confer substantive rights so much as it empowers the bankruptcy court to enforce the unperformed terms of a confirmed plan").

Furthermore, contrary to Emerald's contention, the provision in the reorganization plan that gives the bankruptcy court authority to enforce any "document, instrument, agreement or

8

action undertaken in connection with the Plan" (Appellant's Br. Ex. A, § 11.7) does not grant the bankruptcy court the power to enforce obligations set out in the August 2004 letter. As the bankruptcy court emphasized, it approved the confirmation plan with the understanding that it did not bind the IAG or the Board based on Emerald's *own representations*. A confirmation plan is not just a contract, but "an agreement whose every provision has been affirmed and therefore activated by court order." *In re Heartland Steel Corp.*, 389 F.3d at 745. If Emerald had wished for the bankruptcy court to have authority to enforce the obligations in the August 2004 letter, executed after the court approved the confirmation plan, Emerald should have presented the August 2004 letter to the court for a hearing and confirmation pursuant to 11 U.S.C. § 1127(b). The bankruptcy court approved the confirmation plan, including section 11.7 on the belief that the Board was not bound to the plan and without knowledge of the later obligations imposed on the Board by the August 2004 letter. Should this court now construe the August 2004 letter as an "agreement" under section 11.7 that the bankruptcy court has authority to enforce, this court would be ordering the bankruptcy court to enforce obligations that the bankruptcy court was never given the chance to review or approve (as § 1127 provides) and that are inconsistent with the objectives of the confirmation plan as approved.

Emerald fares no better when challenging the bankruptcy court's determination that sovereign immunity bars it from considering Emerald's request to enforce the terms of the August 2004 letter. Emerald presents several arguments against the Board's assertion of sovereign immunity. First, Emerald contends that the Eleventh Amendment, the source of the state sovereign immunity, does not preclude bankruptcy courts from exercising *in rem* jurisdiction over state or federal governments, *see Cent. Va. Cmty. Coll. v. Katz*, 126 S. Ct. 990,

9

995 (2006); *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446-47 (2004). In presenting this argument, Emerald characterizes its quest for injunctive relief to force the Board to hold suitability review and suspend the disciplinary proceedings as an *in rem* proceeding over the asset of its license. Recognizing that the bankruptcy court's *in rem* jurisdiction cannot be invoked to subject the Board to coercive judicial proceedings and obtain affirmative relief against the state, *see id.* at 776, Emerald instead argues that the relief sought is defensive, and not affirmative, and meant to protect its license. Despite Emerald's characterization, the requested relief is one step removed from the bankruptcy court's *in rem* jurisdiction. Emerald does not request that the bankruptcy court take any action directly regarding the property. Rather, the injunction sought would constrain the state's regulatory powers, and only through that restraint of the state's powers, would the license be protected. *Cf. Nelson v. La Crosse County Dist. Att'y*, 301 F.3d 820, 837 (7th Cir. 2002), *overruled on other grounds by Cent. Va. Cmty. Coll. v. Katz*, 126 S. Ct. at 1005 (there was no *in rem* jurisdiction where appellant filed an adversary bankruptcy proceeding that did not merely involve a *res* but an *in personam* action against state to enjoin it from prosecuting her.) That type of relief is precisely the type of coercive judicial process for which sovereign immunity protects the state against and falls outside the limits of the bankruptcy court's *in rem* jurisdiction.

Nor does this proceeding fit under the exception to sovereign immunity identified in *Ex Parte Young,* 209 U.S. 123. Under the doctrine of *Ex Parte Young*, a party may pursue prospective injunctive relief against individual state officials for violations of federal law. *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002). Emerald argues that the injunctive relief that it seeks arises under federal law, specifically § 1141 and § 1142. These provisions give the

bankruptcy court authority to enforce the terms of a confirmation plan. As discussed above, the terms in the August 2004 letter that Emerald asks the bankruptcy court to enjoin are not in the confirmation plan. The August 2004 letter was executed outside of bankruptcy proceedings. The relief Emerald asks for—enforcement of terms set out only in the August 2004 letter—arise under state contract law and thus do not fall under *Ex Parte Young's* exception for prospective relief from violations of *federal* law by state officials. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *MCI Telecomm. Corp. v. Ill. Bell Tele. Co.*, 222 F.3d 323, 345 n.13 (7th Cir. 2000).

Emerald's argument that the Board waived its sovereign immunity also fails in the face the Board's consistent assertion of its sovereign immunity privilege in the December 2003 letter, the August 2004 letter, the confirmation plan, and even at the hearing for the confirmation plan. Although conceding that the Board has articulated its intention not to waive sovereign immunity, Emerald argues that the Board's actions were to the contrary. In support of this position, Emerald points to the Board's active role in negotiations with Emerald over the license outside of the bankruptcy proceedings and in the disciplinary proceedings as well as to the money that the state receives under section 5.10 of the confirmation plan.

Sovereign immunity may be waived, but only where the state has voluntarily invoked a court's jurisdiction or the state makes a clear statement of intent to submit to a court's jurisdiction. *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). It is not enough, however, for a waiver to be constructive or implied, it must unequivocal. *Id.* at 680.

None of the Board's actions come close to the required unequivocal waiver of sovereign

immunity. The Board was not a party to the bankruptcy proceedings. In fact, the bankruptcy court refused to hear from state during the confirmation hearing based on its nonparty status and its refusal to waive sovereign immunity. (Appellant's App. 179.) Furthermore, the actions by the Board that Emerald identifies as signaling a waiver of sovereign immunity do not provide sufficient grounds under *College Savings Bank* to ignore the provisions in the confirmation plan and the December 2003 and August 2004 letters in which the Board explicitly reserves its sovereign immunity privilege. With regard to the confirmation plan, Emerald's logic that section 5.10's provision of money to the state waives sovereign immunity is untenable in light of section 11's language that "nothing in this Plan and no distribution or transaction that occurs pursuant to this Plan shall be deemed a waiver by the [Board] or by the State of Illinois." (Appellant's Br. Ex. A, § 11.) A confirmation plan is "in effect a contract between the parties." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002). Contracts are interpreted to give effect to every clause. *Atlantic Mut. Ins. Co. v. Metron Eng'g and Constr. Co.*, 83 F.3d 897, 900 (7th Cir. 1996). The distribution of money under section 5.10 cannot be construed as a waiver of sovereign immunity because it would render the last paragraph of section 11 meaningless. Nor does the Board's active role in negotiations over the license abrogate its sovereign immunity. The Board pursued these negotiations *outside* of the bankruptcy proceedings, and these negotiations produced two agreements, the December 2003 letter and August 2004 letter, that announced that the state had no intention of waiving its sovereign immunity. Emerald agreed to these provisions and is now bound by it.

This court now addresses Emerald's final challenge to sovereign immunity: that the bankruptcy court should have considered whether 11 U.S.C § 106 validly abrogates state

sovereignty with regard to sections 105, 362, 1141, and 1142 of the bankruptcy code.[2]  This

court agrees with the bankruptcy court.  The validity of § 106 has no bearing on the sovereign

immunity issue in this case.  The claims barred by sovereign immunity do not arise under any of

the identified sections.  To reiterate, Emerald seeks injunctive relief that would require the Board

to carry out obligations promised in the August 2004 letter, not the terms of the confirmation

plan.  Sections 1141 and 1142 are not applicable.  Nor is § 362, the automatic stay provision; the

bankruptcy court dismissed that claim under law of the case, and Emerald has raised no

arguments in appeal challenging that ruling.  To the extent that Emerald is arguing that the

bankruptcy court should have exercised its discretionary power to issue orders necessary or

appropriate to carry out the provisions of the bankruptcy code pursuant to § 105, this court defers

to the sound judgment of the bankruptcy court and again notes that no provision has been

identified that would allow the bankruptcy court to enforce terms in the August 2004 letter but

not the confirmation plan.  *In re Emerald Casino, Inc*., No. 03-5457, 2003 WL 23147946, *10

(N.D. Ill. Dec. 24, 2003).

     Finally, this court pauses to address the policy concerns raised by Emerald that, without

enforcement by the bankruptcy court of the promises in the August 2004 letter, the Board may

expropriate Emerald's main asset without consequence and undermine the entire bankruptcy

process.  Emerald chose to execute an agreement with the Board outside the bankruptcy

proceedings, even acknowledging the risk during the confirmation hearing of not binding the

Board to the confirmation plan.  Emerald now must face the consequences, whatever they may

---

[2]The Supreme Court has since held that states "acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts. *Cent. Va. Cmty. Coll.*, 126 S. Ct. at 1005.

13

be, of its choice. Furthermore, this court reminds Emerald that it has not been left without remedy and the Board is not free from the commitments it made in the August 2004 letter. The bankruptcy court's dismissal of the state law claims was without prejudice and prevents Emerald only from pursuing injunctive relief on those claims in federal court. Emerald still may pursue those claims in state court.

## CONCLUSION

This court affirms the judgment of United States Bankruptcy Court Chief Judge Eugene R. Wedoff in Emerald Casino, Inc.'s appeal of his decision (Dkt. No. 1). Judgment is entered in favor of the appellees and against the appellant.

ENTER

JAMES F. HOLDERMAN
United States District Judge

DATE: March 8, 2006